# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————

Nº 12-CV-5928 (JFB)(AKT)

———————————

## EDWIN D. SCHINDLER,

Plaintiff,

VERSUS

## ROBERT E. LYON,

Defendant.

———————————

**MEMORANDUM AND ORDER**
August 28, 2013

———————————

JOSEPH F. BIANCO, District Judge:

*Pro se* plaintiff Edwin D. Schindler ("Schindler" or "plaintiff") brings this diversity action against *pro se* defendant Robert E. Lyon ("Lyon" or "defendant") alleging that defendant was unjustly enriched. Specifically, plaintiff claims that defendant promised to compensate him for legal services and that defendant has failed to pay him the majority of what he is owed.

Defendant now moves to dismiss the complaint, pursuant to Federal Rules of Civil Procedure 12(b)(2) and (b)(3), for lack of personal jurisdiction and improper venue. For the reasons that follow, defendant's motion to dismiss is denied.[1]

## I. BACKGROUND

### A. Factual Background

The following facts are taken from the complaint and are not findings of fact by the Court. These allegations are assumed to be true for the purpose of deciding this motion and are construed in a light most favorable to plaintiff, the non-moving party.

———————————

"compelling evidence" or "proof" in support of certain allegations in the complaint (Def.'s Reply at 3), and that the complaint does not allege the existence of a written agreement between the parties (an attorney and his client), the absence of which, according to defendant, is an absolute bar to the recovery of legal fees (Def.'s Mem. at 5). Defendant chose to move to dismiss the complaint under Rules 12(b)(2) and (b)(3), and not 12(b)(6). Therefore, the Court only addresses defendant's arguments regarding lack of personal jurisdiction and improper venue, and does discuss whether the complaint fails to state a claim.

———————————

[1] In both his motion to dismiss and in his reply in support of that motion, defendant makes several comments regarding the merits of the action, including that plaintiff has not presented any

Plaintiff is domiciled in Woodbury, New York and is a citizen of New York. (Compl. ¶ 1.) He is an attorney and a member of the Bar of the State of New York. (*Id.* ¶¶ 2, 4.) Defendant lives in Palos Verdes, California, and is a citizen of the state of California (*Id.* ¶ 5.) Defendant is also an attorney and is a member of the Bar of the State of California. (*Id.* ¶¶ 5-6.)

On November 17, 2003, Haggar International Corporation ("Haggar") commenced a trademark infringement action in this District. *See Haggar Int'l Co. v. United Co. for Food Industry Corp.*, No. 03-CV-5789 (E.D.N.Y.) ("the underlying action"). Defendant is the lead counsel for Haggar in that matter. (Compl. ¶ 14.) On August 4, 2004, defendant was granted admission *pro hac vice* to the United States District Court for the Eastern District of New York for the limited purpose of appearing on behalf of Haggar in the underlying action. (*Id.* ¶ 9.)

In November 2004, defendant retained plaintiff, with Haggar's consent, as co-counsel and local counsel in the underlying action. (*Id.* ¶ 17.) Between November 2004 and September 2006, Haggar paid plaintiff directly for the legal services performed on its behalf. (*Id.* ¶ 18.) However, on October 1, 2006, the principal of Haggar passed away following a car accident. (*Id.* ¶ 19.) After the passing of its principal, Haggar remitted only a small portion of the payment due to plaintiff and subsequently ceased paying him entirely. (*Id.* ¶ 20.)

The complaint alleges that, after Haggar stopped paying him, defendant told plaintiff that he "would now be responsible for Schindler's fees for the legal services performed by Schindler, inasmuch as Lyon requires the assistance of co-counsel to adequately handle the workload . . . ." (*Id.* ¶ 22.) Plaintiff attached to his complaint an e-mail that he sent defendant on June 20, 2009 with a bill for $6,000 as compensation for the legal services plaintiff performed in April and June 2009. (*Id.* Ex. 1.) Although plaintiff did not receive payment for the legal services noted in the June 20, 2009 bill, plaintiff states that he continued to work on the underlying action at "the request of Lyon, and out of a sense of ethical and practical necessity to the client." (*Id.* ¶ 25.) On May 5, 2011 and on July 15, 2011, defendant executed wire transfers to plaintiff in the amounts of $1,250 and $2,000, respectively. (*Id.* ¶¶ 26, 29.) However, plaintiff has not been paid subsequently (*id.* ¶ 30), and alleges that the reasonable value of legal services rendered to Lyon that he has not yet received compensation for exceeds $100,000 (*id.* ¶ 36).

### B. Procedural History

On November 30, 2012, plaintiff filed the complaint in this action. On February 13, 2013, defendant filed his motion to dismiss. Plaintiff submitted his opposition to that motion on February 27, 2013, and defendant replied on March 8, 2013. The Court has fully considered all of the parties' submissions.

## II. DISCUSSION

### A. Personal Jurisdiction

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). However, "[p]rior to discovery, a plaintiff may defeat a motion to dismiss by producing legally sufficient allegations of jurisdiction." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam). In considering a Rule 12(b)(2) motion, the

pleadings and affidavits are to be construed in the light most favorable to plaintiff, the non-moving party, and all doubts are to be resolved in plaintiff's favor. *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). However, a plaintiff's "unsupported allegations" can be rebutted by "direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction" if plaintiff does not "counter that evidence." *Schenker v. Assicurazioni Genereali S.p.A., Consol.,* No. 98 Civ. 9186, 2002 WL 1560788, at *3 (S.D.N.Y. July 15, 2002).

It is well settled that "[i]n diversity or federal question cases the court must look first to the long-arm statute of the forum state, in this instance, New York." *Bensusan Rest. Corp. v. King,* 126 F.3d 25, 27 (2d Cir. 1997). "If the exercise of jurisdiction is appropriate under that statute, the court then must decide whether such exercise comports with the requisites of due process." *Id.* Thus, the district court should engage in a two-part analysis in resolving personal jurisdiction issues: (1) whether New York law would confer jurisdiction by New York courts over defendant, and (2) whether the exercise of jurisdiction over defendant comports with the Due Process Clause of the Fourteenth Amendment. *See Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005).

Under New York law, there are two bases for personal jurisdiction over out-of-state defendants: (1) general jurisdiction pursuant to N.Y. C.P.L.R. § 301, and (2) long-arm jurisdiction pursuant to N.Y. C.P.L.R. § 302. It is undisputed in this case that defendant is not subject to general jurisdiction in New York. However, as set forth below, plaintiff's complaint satisfies both the strictures of New York law under the state's long-arm statute and the requirements of due process. Accordingly,

defendant's motion to dismiss the action for lack of personal jurisdiction is denied.

### 1. Long-Arm Jurisdiction

Under N.Y. C.P.L.R. § 302(a):

> a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or (3) commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or (4) owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302(a).

To establish personal jurisdiction under Section 302(a)(1), the only portion of the statute that is relevant to the personal jurisdiction inquiry in this particular case, "two requirements must be met: (1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt.,*

*LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (citing *McGowan v. Smith*, 52 N.Y.2d 268 (1981)). "[T]he statute allows jurisdiction only over a defendant who has 'purposefully availed himself of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws.'" *Fort Knox Music Inc. v. Baptiste*, 203 F.3d 193, 196 (2d Cir. 2000) (alteration omitted) (quoting *Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 18 (1970)).

Here, plaintiff alleges that Section 302(a)(1) is applicable to defendant because: (1) the instant *quasi*-contract claim being asserted against defendant concerns the same matter for which Lyon was admitted *pro hac vice* in this district, and, therefore, the exercise of specific jurisdiction over defendant is proper; or (2) defendant purposefully availed himself of New York when he hired a New York attorney to perform legal work regarding a New York lawsuit. Defendant asserts that performing legal work in a forum *pro hac vice* does not constitute transacting business within the State as defined by the CPLR. Defendant also argues that he did not avail himself of the benefits or privileges of New York because he did not benefit from plaintiff's activities; rather, Haggar was the sole beneficiary of plaintiff's legal work. For the reasons set forth below, the Court finds that the allegations contained in the complaint comprise a "legally sufficient allegation of jurisdiction" that defendant transacted business within the state and that the claims asserted arise from that business activity. *In re Magnetic Audiotape*, 334 F.3d at 206. Accordingly, defendant is subject to this Court's jurisdiction under Section 302(a)(1).

a. Transaction of Business in New York

Several factors should be considered in determining whether an out-of-state defendant transacts business in New York, including:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires [defendant] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Sunward Elec., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996)). None of these factors is dispositive; "[t]he ultimate determination is based on the totality of circumstances." *Id.* at 23.

Although the above-referenced factors are not entirely applicable (because the parties did not have a written contract), the Court finds that the factors and the totality of the circumstances strongly favor the exercise of jurisdiction over defendant. As to the first factor, defendant had an on-going contractual relationship with plaintiff in New York. By allegedly receiving and benefiting from the legal services of plaintiff on a continuous basis (over five years, according to the complaint), defendant had an on-going contractual relationship with the New York-based plaintiff. *See Assil Gem Corp. v. Greyhound Leisure Servs., Inc.*, 00

CIV. 0072, 2000 WL 375244, at *3 (S.D.N.Y. Apr. 11, 2000) (holding that although "defendant maintains no physical presence in the State, as it has no offices, bank accounts or sales agents here; . . . did not negotiate or execute the transaction with plaintiff in New York; . . . and [] the parties have never even met in the State in connection with the subject transaction," long arm jurisdiction was appropriate due to the "the quality and nature of defendant's activities," including "a six-year business relationship with a New York domiciliary, utilizing telephone calls, e-mail and fax transmissions to communicate with its supplier" and the fact that the "performance of the contract was New York based").

As to the second factor, although the complaint does not allege where the contract was negotiated or executed, or whether defendant has travelled to New York regarding the relationship, a lack of physical presence in the state does not remove jurisdiction. *See Parke-Bernet*, 26 N.Y.2d at 17 ("It is important to emphasize that one need not be physically present in order to be subject to the jurisdiction of our courts under CPLR 302 for, particularly in this day of instant long-range communications, one can engage in extensive purposeful activity here without ever actually setting foot in the State."). In *High Fashion Wigs, Inc. v. Peter Hammond Adver., Inc.*, 32 N.Y.2d 583 (1973), the Court of Appeals stated that, although defendant had travelled to New York to accept the contract, personal jurisdiction over the defendant would still have been appropriate absent that presence in New York because "looking at the transaction as a whole, [defendant] engaged in that kind of purposeful activity which . . . renders it reasonable that he should answer in New York." *Id.* at 587 (internal alterations, citations, and quotation marks omitted). In reaching its decision, the court noted that the contract involved services that

were to be performed entirely in New York. *Id.* This case is similar. Even if defendant did not negotiate the contract in New York or travel there for purposes of the contractual relationship, he allegedly agreed to pay for legal services that would be performed *entirely* in New York. By paying someone in New York to perform services in this state, while simultaneously creating an ongoing relationship with a New York domiciliary regarding those services, defendant should have known that he would be subject to suit in New York if he failed to pay for those services. *Cf. George Reiner & Co. v. Schwartz*, 41 N.Y.2d 648, 653-54 (1977) (finding personal jurisdiction because of, *inter alia*, the "purposeful creation of a continuing relationship with a New York corporation").

The Court notes that because there was no written contract, the third and fourth factors are not applicable to this action.

This action is directly analogous to the Court of Appeals' recent decision in *Fischbarg v. Doucet*, 9 N.Y.3d 375 (2007). In *Fischbarg*, defendants, a California resident and her corporation, retained plaintiff, a New York attorney, to represent her corporation in a lawsuit in Oregon federal court. Defendants never entered New York and communicated with plaintiff regarding the lawsuit solely through telephone calls and e-mails. Eventually, a dispute over plaintiff's legal fees arose and he filed an action in New York State court. *Id.* at 377-79. The Court of Appeals held that defendants' retainer of a New York attorney and the "ongoing attorney-client relationship" subjected them to personal jurisdiction in New York. *Id.* at 381. The Court continued:

> [D]efendants here have [] engaged in sustained and substantial transaction

of business in New York. They contacted plaintiff here to retain him and thereby projected themselves into our state's legal services market. Thereafter, on their own volition, they continued their communications with plaintiff here, utilizing his services and thus invoking the benefits and protections of our laws relating to the attorney-client relationship. It is the nature and quality of these contacts, through which defendants established a substantial ongoing professional commitment between themselves and plaintiff, governed by the laws of our state, which support long-arm jurisdiction.

*Id.* at 382-83 (citations and internal quotation marks omitted). Although all of these reasons noted in *Fischbarg* support personal jurisdiction over defendant in this case, as noted *supra*, there is an additional reason why personal jurisdiction is even more appropriate here: the underlying action for which plaintiff was retained occurred in this state.

Defendant argues that he cannot be subject to personal jurisdiction in New York because his *pro hac vice* appearance in New York was for a limited purpose and, therefore, that he did not purposefully avail himself of the benefits and privileges of this state. (Def.'s Mem. at 3-4 (citing *E-Z Bowz, L.L.C. v. Prof'l Prod. Research Co.*, 00 CIV 8670, 2003 WL 22064259, at *8 (S.D.N.Y. Sept. 5, 2003) (Report and Recommendation) (holding that attorney was not subject to personal jurisdiction when his only contact with forum was *pro hac vice* representation of client)).) However, that argument is entirely misplaced. Personal jurisdiction is not being created here because of the defendant's *pro hac vice* status in the underlying action; rather, defendant is subject to personal jurisdiction in New York because he allegedly retained a New York attorney to render services exclusively in New York and had a substantial and ongoing business relationship with a New York domiciliary. The result of this motion would be the same even if defendant were not an attorney and never made an appearance in the courts of this state. In short, although defendant's *pro hac vice* status cannot subject him to suit in New York, so too can it not be used as a shield to protect him against a suit properly brought in New York based upon the other above-referenced factors supporting personal jurisdiction.

Defendant also appears to argue that he may not be subject to long-arm jurisdiction because he did not benefit from the alleged contract. (Def.'s Reply at 6.) Although unclear from his submission, it appears that defendant is attempting to invoke the fiduciary shield doctrine. Under the fiduciary shield doctrine, "an individual should not be subject to jurisdiction if his dealings in the forum State were solely in a corporate capacity. It is based upon the notion that it is unfair to subject a corporate employee personally to suit in a foreign jurisdiction when his only contacts with that jurisdiction have been undertaken on behalf of his corporate employer." *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467-68 (1988). However, in *Kruetter*, the Court of Appeals explicitly rejected the fiduciary shield doctrine, and, thus, it cannot be used to defeat personal jurisdiction over defendant. *See id.* at 472; *see also Family Internet, Inc. v. Cybernex, Inc.*, 98 CIV. 0637, 1999 WL 796177, at *4 (S.D.N.Y. Oct. 6, 1999) ("Though the 'fiduciary shield' doctrine was once vigorously applied in this circuit to shield corporate officers and employees from long-arm jurisdiction where

their activities were conducted solely in a corporate capacity, the New York Court of Appeals held in *Kreutter* . . . that this doctrine is not available to defeat long-arm jurisdiction that is otherwise valid under section 302.").[2]

Therefore, after carefully reviewing the totality of defendant's activities in New York – notably, defendant's hiring of a New York based attorney to perform services *solely* in New York, a substantial ongoing attorney-client relationship regarding those New York services, and the wiring of money to a New York domiciliary as partial payment for those services – the Court finds that defendant purposefully availed himself of the privilege of conducting activities in New York.

### b. Relationship between Defendant's Conduct in New York and the Claims Asserted

Section 302(a) also requires that the claims asserted "aris[e] from any of the acts" that provide the basis for exercising jurisdiction. N.Y. C.P.L.R. § 302(a). "New York courts have held that a claim arises from a particular transaction when there is some articulable nexus between the business transacted and the cause of action sued upon or when there is a substantial relationship between the transaction and the claim asserted." *Sole Resort*, 450 F.3d at 103 (internal alteration, citations, and quotation

marks omitted). "A connection that is merely coincidental is insufficient to support jurisdiction." *Id.* (citation and internal quotation marks omitted).

In this case, there is undisputedly an articulable nexus between the business transacted and the cause of action sued upon. The basis for finding that defendant transacted business in New York is his retaining of a New York attorney to assist him in a New York lawsuit and the substantial relationship he had with this New York attorney. This transaction is the basis for plaintiff's instant lawsuit for attorney's fees. Thus, there is an articulable nexus between the quasi-contract claim asserted here and the business transacted by defendant in New York. Again, this action is directly analogous to *Fischbarg*, in which the Court of Appeals concluded that there was a substantial relationship between plaintiff's action in New York for legal fees and defendants' solicitation of his legal services and their communications with him regarding the attorney-client relationship. 9 N.Y.3d at 384. The court held that the connections to New York were "not merely coincidental occurrences that have a tangential relationship to the present case [but that] [t]hey form the basis of this action and, indeed, plaintiff[']s claims for legal fees are directly dependent upon them." *Id.* (citation and internal quotation marks omitted).

### 2. Requirements of Due Process

Having concluded that personal jurisdiction over defendant exists pursuant to New York's long-arm statute, the Court must also determine whether the exercise of jurisdiction over defendant comports with the Due Process Clause of the Fourteenth Amendment, which requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities

---

[2] The Court notes that, even if the fiduciary shield doctrine were followed in New York, it would not defeat jurisdiction in this case. The complaint does not allege that defendant was acting in a corporate capacity and that Haggar received all of the benefit of plaintiff's legal services, but rather that defendant hired plaintiff to assist *him* with the underlying action. In fact, according to the complaint, Haggar no longer wished to pay for plaintiff's services and it was defendant who decided to re-hire plaintiff.

within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citation and internal quotation marks omitted); *see also World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980) ("[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there."). There are two aspects of the due process analysis: (1) the minimum contacts inquiry, and (2) the reasonableness inquiry. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2d Cir. 2010). Although the constitutional due process issue is a separate question, "[o]rdinarily [] if jurisdiction is proper under the CPLR, due process will be satisfied because CPLR § 302 does not reach as far as the constitution permits." *Topps Co. v. Gerrit J. Verburg Co.*, 961 F. Supp. 88, 90 (S.D.N.Y. 1997).

The Court first turns to the minimum contacts analysis. Because defendant allegedly hired a New York lawyer to assist him with a lawsuit in New York, and had a substantial attorney-client relationship with an attorney of this state, defendant had sufficient contacts with New York such that it should have been reasonably foreseeable to him that he would be subject to suit in New York. *See Fishbarg*, 9 N.Y. 3d at 385 ("Defendants here purposefully availed themselves of New York's legal services market by establishing a continuing attorney-client relationship with plaintiff. Their contacts here were sufficient, consisting of solicitation of plaintiff[']s services here and frequent communications with him. Given these facts, they should have reasonably expected to defend against a suit based on their relationship with plaintiff in New York."); *see also Burger King*, 471 U.S. at 473 (explaining that, for purposes of the due process analysis and "with respect to interstate contractual

obligations, we have emphasized that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities" (citation and internal quotation marks omitted)).

With respect to the reasonableness inquiry, even where an out-of-state defendant is deemed to have purposefully availed himself of the forum state, a plaintiff "must still demonstrate that the exercise of jurisdiction does not 'offend traditional notions of fair play and substantial justice' and is thus reasonable under the Due Process Clause." *Chloe*, 616 F.3d at 172-73 (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987)). As set forth by the Supreme Court, courts should consider five factors when determining the reasonableness of a particular exercise of jurisdiction:

> A court must consider [1] the burden on the defendant, [2] the interests of the forum State, and [3] the plaintiff's interest in obtaining relief. It also must weigh in its determination [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and [5] the shared interest of the several States in furthering fundamental substantive social policies.

*Asahi Metal Indus.*, 480 U.S. at 113 (citation and internal quotation marks omitted)). "Where the other elements for jurisdiction have been met, dismissals on reasonableness grounds should be 'few and far between.'" *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 246 (S.D.N.Y. 2010) (quoting *Metro. Life Ins.*, 84 F.3d at 575).

With respect to the first factor, there is undoubtedly some burden on defendant if he is forced to travel to New York for trial. "The inconvenience, however, cuts both ways since all of [plaintiff's] witnesses would have to travel to [California] if the case were brought there." *Chloe*, 616 F.3d at 173 (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129-30 (2d Cir. 1999) ("Even if forcing the defendant to litigate in a forum relatively distant from its home base were found to be a burden, the argument would provide defendant only weak support, if any, because the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago.")). The second factor favors keeping New York as the forum state, since "a state frequently has a 'manifest interest in providing effective means of redress for its residents,'" *Chloe*, 616 F.3d at 173 (quoting *Burger King*, 471 U.S. at 483), as does the third factor, as plaintiff is located in New York and the underlying action occurred in New York. With respect to the fourth factor, "courts generally consider where witnesses and evidence are likely to be located." *Metro. Life Ins.*, 84 F.3d at 574. This factor is neutral because most of the evidence is stored electronically and the two primary witnesses are the parties. The final factor is also neutral. The Court finds, therefore, that asserting jurisdiction over Lyon "comports with traditional notions of fair play and substantial justice, such that it satisfies the reasonableness inquiry of the Due Process Clause." *Chloe*, 616 F.3d at 173 (citation and internal quotation marks omitted).

Having conducted the requisite minimum contacts and reasonableness inquiries, the Court concludes that its exercise of jurisdiction over Lyon comports with the principles of due process.

***

In sum, construing the pleadings in the light most favorable to plaintiff, the nonmoving party, and resolving all doubts in his favor, the Court concludes that plaintiff has adequately alleged a *prima facie* case of personal jurisdiction over defendant. Accordingly, defendant's motion to dismiss for lack of personal jurisdiction is denied.

### B. Venue

Defendant also argues that this action should be dismissed for improper venue. For the reasons set forth below, plaintiff has demonstrated that the Eastern District of New York is a proper venue for this action.

#### 1. Legal Standard

Under 28 U.S.C. § 1391, "[a] civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." *Id.* § 1391(b)(2). Although defendant's submissions are unclear, it appears undisputed that this "substantial part" provision of Section 1391(b)(2) directs the venue inquiry in this case. (Def.'s Mem. at 8.)

Courts conduct a two-part inquiry to determine whether venue is appropriate under Section 1391(b)(2). First, the Court must "identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005). Second, the Court determines whether "a substantial part of those acts or omissions occurred in the district where suit was filed, that is, whether significant events or omissions material to those claims have occurred in the district in question." *Id.* (internal alterations, citations, and quotation marks omitted). As to the

second part of this inquiry, the Court notes that "'[s]ubstantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Daniel*, 428 F.3d at 432–33. As such, "[w]hen material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and, thus, substantial, but when a close nexus is lacking, so too is the substantiality necessary to support venue." *Id.* at 433. "Once an objection to venue has been raised, plaintiff bears the burden of proving that venue is proper." *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 457 (S.D.N.Y. 2000).

Finally, the Court notes that "venue is appropriate in *each* district where a substantial part of the events or omissions occurred, and thus venue may [be] appropriate in this district even if a greater portion of events occurred elsewhere." *Concesionaria DHM, S.A. v. Int'l Fin. Corp.,* 307 F. Supp. 2d 553, 559 (S.D.N.Y. 2004) (emphasis added).

## 2. Application

"In determining whether venue is proper for a breach of contract action . . . courts consider a number of factors, including where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." *PI, Inc., v. Quality Prods., Inc.*, 907 F. Supp. 752, 758 (S.D.N.Y. 1995). Although this is not a breach of contract action, the Court finds that these factors assist the Court in determining that the acts underlying the quasi-contract claim bear a "close nexus" to defendant's activities in this District; thus, the Court concludes that venue is proper here. *Daniel*, 428 F.3d at 433.

First, the alleged agreement required that defendant make payments to New York, i.e., the agreement mandated performance by defendant in New York. *See Concesionaria,* 307 F. Supp. 2d at 561 ("It was the activities of the defendants in . . . failing to make payments into [plaintiff's New York bank] accounts, together with the other activities in negotiating the agreements, that have drawn them into this District."). Similarly, the alleged breach occurred in New York when defendant failed to make payments to plaintiff in New York. *See Saltzman v. La. Auction Exch., Inc.*, 997 F. Supp. 537, 541 (S.D.N.Y. 1998) (finding venue appropriate in New York because, *inter alia*, "payment under the terms of [the parties'] agreement was due to plaintiff in New York"). In addition, all of the legal services plaintiff was hired to perform occurred in this District for a lawsuit that was proceeding in this District. *See Fisher v. Hopkins*, 02 CIV 7077, 2003 WL 102845, at *3 (S.D.N.Y. Jan. 9, 2003) (finding venue appropriate when "a significant portion of the services under the alleged agreement were to be performed in New York").

Therefore, plaintiff has satisfied his burden of demonstrating that venue is appropriate in this District because a substantial part of defendant's acts or omissions occurred in New York. Defendant not only allegedly hired a New York attorney and made (or failed to make) payments into a New York attorney's bank account, but that attorney was hired to perform services in this District. Even if a substantial number of activities relevant to this litigation occurred in California, venue is still appropriate in this District because a substantial part of the alleged activities

occurred in the Eastern District of New York.[3]

[3] Defendant filed a motion to dismiss this action for improper venue pursuant to Rule 12(b)(3) and has never suggested that he intended, in the alternative, to file a motion to transfer venue pursuant to 28 U.S.C. § 1404(a). However, in his reply, defendant writes: "Hence, if the Court is prone to dismiss this case under Fed. R. Civ. P. 12(b)(2) but is considering instead the transfer of the case to California, where Schindler is already litigating another case against Lyon, venue would be appropriate and convenient there." (Def.'s Reply at 7.) The Court notes that, even if defendant intended to also file a motion to transfer venue, such a motion would be denied. Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." In determining whether to transfer venue, courts examine (1) whether the action could have been brought in the proposed forum, and (2) whether "the transfer would promote the convenience of parties and witnesses and would be in the interests of justice." *Coker v. Bank of Am.*, 984 F. Supp. 757, 764 (S.D.N.Y. 1997) (citation and internal quotation marks omitted). "Among the factors to be considered in determining whether to grant a motion to transfer venue are, *inter alia*: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (citation and internal quotation marks omitted)). Based upon the record before the Court, the Court believes that a transfer of venue would not be in the interest of justice. Most notably, "plaintiff's choice of venue is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer." *Royal Ins. Co. of Am. v. United States*, 998 F. Supp. 351, 353 (S.D.N.Y.1998) (citations omitted). In addition, the locus of operative facts occurred in this District because defendant's retaining of plaintiff occurred in this District and the underlying action was a lawsuit brought in this District. Accordingly, to the extent that defendant is suggesting that the case should be transferred to California under Section 1404(a), the Court concludes that there is no basis to do so.

[4] In a declaration filed on August 21, 2013, plaintiff advises the Court that an application for an attorney's lien is pending in the underlying action, and that there is another litigation regarding a different fee dispute between the same parties pending in the Central District of California. The fact that those matters are pending does not impact the Court's determination of the pending motion in this case as set forth in this Memorandum and Order.

## III. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is denied in its entirety.[4]

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:  August 28, 2013
        Central Islip, New York

*    *    *

Plaintiff is proceeding *pro se* and defendant is proceeding *pro se*.